# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL DAVID BARNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 8408 |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael David Barnett ("Barnett") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Barnett asks the Court to reverse and remand the ALJ's decision, and the Commissioner seeks an order affirming the decision. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

## I. BACKGROUND

Barnett was born on December 9, 1953 and has a history of bilateral degenerative joint disease, status post cortisone injections of the right knee, diabetes mellitus, GERD (gastroesophageal reflux disease), hypertension, and total left knee replacement. Barnett has a high school education and previously worked as a medical equipment repairman. Barnett alleges that he became totally disabled on January 14, 2009 because of diabetes, arthritis, knee surgeries, and visual problems. Barnett had an uninterrupted 35 year work history prior to his alleged onset date of disability. Barnett's insured status for DIB purposes expired on December 31, 2014, which means Barnett had to show he was disabled on or before that date in order to be eligible for DIB. Shideler v. Astrue, 688 F.3d 308, 311 (7th Cir. 2012) (noting "the claimant

must establish that he was disabled before the expiration of his insured status . . . to be eligible for disability insurance benefits.").

Under the standard five-step analysis used to evaluate disability, the ALJ found that Barnett had not engaged in substantial gainful activity since January 14, 2009, the alleged onset date (step one); his osteoarthritis (degenerative joint disease of the knees, bilaterally) was a severe impairment (step two); but that his osteoarthritis did not qualify as a listed impairment (step three). The ALJ found that Barnett's diabetes mellitus, hypertension, and GERD were not severe because they did not cause more than a minimal limitation on Barnett's ability to perform basic work activities. The ALJ concluded that Barnett's depression was not a medically determinable impairment and that even if it was, the condition did not satisfy the 12-month durational requirement. The ALJ determined that Barnett retained the residual functional capacity ("RFC") to perform medium work (lifting and carrying up to 50 pounds occasionally and 25 pounds frequently and sitting, standing, and walking approximately 6 hours in an 8-hour workday) except that he was limited to work requiring no climbing of ladders, no more than occasionally stair climbing, and no more than occasional stooping, kneeling, crouching, and crawling. Given this RFC, the ALJ concluded that Barnett was able to perform his past relevant work as a medical equipment repairman as that work was actually performed by Barnett and as it is generally performed in the national economy. The Appeals Council denied Barnett's request for review on July 25, 2015. Barnett now seeks judicial review of the final administrative decision of the Commissioner, which is the ALJ's decision. O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order

to determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listing found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform is former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2012); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a) (2012). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.3d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ricardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighting evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998). Finally, an ALJ's credibility determination should be upheld "unless it is patently wrong." Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Barnett's claim at step four, finding that Barnett retains the residual functional capacity to perform his past relevant work as a medical equipment repairman. Barnett challenges the ALJ's decision on two grounds: (1) the ALJ's finding that Barnett did not have a medically determinable mental impairment or a mental impairment that met the 12-

month durational requirement and (2) the ALJ's assessment of Barnett's subjective symptoms. The Court agrees that the ALJ failed to adequately consider Barnett's alleged depression.

## A. Duty to Develop a Full and Fair Record

Barnett argues that the ALJ failed to properly evaluate his mental impairment at Step two. At Step two, the ALJ found that Barnett has one severe impairment, osteoarthritis (degenerative joint disease of the knees, bilaterally). (R. 28). The ALJ found that Barnett's depressive disorder was not a medically determinable impairment because the diagnosis was not made by an acceptable medical source or clinical psychologist. Id. Alternatively, the ALJ found that even if Barnett had a medically determinable affective disorder, the condition did not satisfy the 12-month durational requirement "being present in the record only for the 3 month period May-July 2013." Id.

At step two of the sequential evaluation process, the claimant must show that he suffers from a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). Evidence from an "acceptable medical source" is required to establish the existence of a "medically determinable impairment" at step two. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); 20 C.F.R. § 404.1513(a); 20 C.F.R. § 416.913(a). A licensed clinical social worker is not an "acceptable medical source" under the regulations but is an "other source." See SSR 06-03p, 2006 WL 2329939, at *2 (defining medical sources who are not "acceptable medical sources" as licensed clinical social workers and therapists). Evidence from other medical sources, including social workers, may be used to show the severity of a claimant's impairments and how they affect his ability to work. 20 C.F.R. § 404.1513(d); 20 C.F.R. § 416.913(d).

Barnett thinks the ALJ should have further developed the record regarding his depression. The Court agrees that the ALJ had a duty to develop the record more fully with respect to Barnett's alleged mental impairment. Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. Smith v. Apfel, 231 F.3d 433, 437

(7th Cir. 2000). In order to develop the record, an ALJ may request a consultative examination when claimant's medical evidence about an impairment is insufficient to make a disability determination. 20 C.F.R. §§ 404.1517, 404.1519a(b), 416.917, 416.919a(b). With regard to consultative exams, an "ALJ is not *required* to order such examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." Skinner v. Astrue, 478 F.3d 836, 844 (7th Cir. 2007). The burden is on the claimant to introduce some objective evidence that further development of the record is necessary, particularly if the claimant is represented by counsel. Poyck v. Astrue, 414 Fed. Appx. 859, 861 (7th Cir. March 25, 2011). "Failure to fulfill [the duty to develop a full and fair record] 'is good cause' to remand for gathering of additional evidence." Smith, 231 F.3d at 437.

Regarding his burden, Barnett did produce records of a licensed clinical social worker, Deanne Dreschler ("Dreschler"). Barnett met with Dreschler at Maine Center on 14 occasions over three months, from May 16, 2013 to August 19, 2013.[1] (R. 940-64). On May 16, 2013, Barnett saw Dreschler for an initial mental health assessment. (R. 952-57). Barnett reported difficulty sleeping, racing thoughts, worrying often, irritability, and occasional angry outbursts (e.g. shouting at others).[2] (R. 952). Barnett stated that he felt hopeless due to lack of employment for four years and the possibility that he would need to sell his townhouse in a few days due to lack of income. Id. Barnett described the severity of his symptoms as causing a moderate functional impairment in life areas. Id.

In her Diagnostic Impression, Dreschler indicated that Barnett presented as anxious and slightly irritable. (R. 958). Barnett's affect was restricted and his thoughts were tangential at times. Id. Dreschler diagnosed Barnett with Depressive Disorder NOS. Id. Dreschler assigned

---

[1] Maine Center was a mental health treatment center in Park Ridge which provided mental health treatment to clients without private insurance. See Chicago Tribune, *Park Ridge's Maine Center "Regrouping" After Planned Merger Falls Through*, April 7, 2015, http://www.chicagotribune.com/suburbs/park-ridge/news/ct-prh-maine-center-tl-0409-20150407.

[2] Barnett testified that he has been taking sleeping pills since 2009. (R. 62).

Barnett a GAF score of 60, indicating moderate symptoms. Id. Dreschler thought Barnett would benefit from individual therapy to obtain necessary social support, increase his coping skills, and manage his anger. Id. Dreschler recommended individual counseling one to four times a month for 60 minutes. Id.

At his first therapy session on May 21, 2013, Barnett's affect was again restricted and his thought process showed minimal insight. (R. 951). At a subsequent session on June 5, 2013, Barnett's affect was brighter, but restricted. (R. 949). Barnett's thought process showed minimal insight and his speech was rapid at times. Id. On June 10, 2013, Barnett reported conflict with his roommate and appeared slightly anxious with a tangential thought process. (R. 948). The following month on July 3, 2013, Barnett showed decreased insight and his mood was anxious and depressed. (R. 945). At a therapy session a week later, Barnett's mood was slightly depressed, anxious, and worried with a tangential thought process. (R. 944). Dreschler opined that Barnett's functioning was moderately impaired. Id. On July 17, 2013, Dreschler noted that Barnett was no longer eligible for General Assistance because he sold his townhouse. (R. 48, 942). Barnett's mood was described as depressed. Id. His thought process was tangential and he showed decreased insight. Id. Barnett's level of functioning was moderately impaired. Id. On July 13, 2013, Barnett appeared slightly anxious with decreased insight. (R. 940). Dreschler assessed Barnett's functioning as moderately impaired. Id. At his three-month review on August 19, 2013, Dreschler noted that Barnett had a little more insight, but Barnett appeared frustrated with a slightly tangential thought process. (R. 964). Barnett's mental functioning was mildly to moderately impaired. Id. The Maine Center records are sufficient objective evidence to meet Barnett's burden to show that the ALJ erred by not further developing the record.

Although the ALJ found that Barnett did not have a mental impairment because his social worker was not an acceptable medical source, the ALJ failed to consider that Barnett's lack of insurance and financial resources may have been the cause. The record before the ALJ

6

contained references to Barnett's financial hardships and lack of insurance. Barnett testified that his "savings are all gone" and he has no health insurance. (R. 48, 49). Barnett said that he used the emergency room as much as he did due to his lack of health insurance. (R. 50-51). Barnett also testified that he had been out of compliance with his medicine because of his inability to cover the costs. (R. 51). Barnett provided a list of medications he had been prescribed and would be taking if he had insurance. Id. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled by physicians and psychologists." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). The ALJ did not ask Barnett at the hearing how his lack of medical insurance placed restrictions on the type of treater he saw. In his decision, the ALJ made no mention of Barnett's lack of health insurance or financial situation. The ALJ should have considered Barnett's inability to pay for an acceptable medical source. The ALJ's failure to do so was an error because the ALJ knew that Barnett's lack of insurance and financial resources could explain his lack of a diagnosis from an acceptable medical source.

In this case, the need for a consultative psychological examination was apparent and the ALJ violated his duty to develop the record. The record contains evidence of a mental impairment, but there is a lack of evidence from an acceptable medical source. A consultative examination could have uncovered whether Barnett has a medically determinable mental impairment. Instead of ordering a consultative psychological examination for Barnett based on the Maine Center records, the ALJ simply noted that the medical record did not contain a diagnosis from an acceptable medical source regarding a mental impairment and then dismissed it as not a medically determinable impairment. (R. 28). Furthermore, the nonexamining state agency medical consultants, Drs. Aquino and Bone, given substantial

weight by the ALJ in her RFC discussion, were not afforded the opportunity to review the records from Maine Center. (R. 32, 76-113). Thus, the Maine Center records were unaccounted for in the records that formed the basis of the expert opinions on which the ALJ relied. Given Barnett's diagnosis and treatment for depression with a social worker and his lack of insurance and financial resources, the ALJ should have ordered a consultative psychological examination with an acceptable medical source before rendering a decision. See Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (stating "[but the claimant] did produce evidence in the form of her own testimony as well as medical evidence . . . . If the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations."). Without a full development of the record and a medical opinion from an acceptable medical source, the Court cannot find that the ALJ's step two and RFC findings are supported by substantial evidence. On remand, the ALJ should order a consultative examination of Barnett, to be completed by a clinical psychologist and to include an assessment of any and all work-related limitations caused by Barnett's mental impairment.

**B.     Twelve-Month Duration Requirement**

Barnett also contends that the ALJ did not properly evaluate whether his depression had lasted or could be expected to last for 12 consecutive months. Even if the Maine Center records could support a finding of a medically determinable mental impairment, the ALJ found that the "allegations of depression and depression-related symptoms are present only for the period from May through July 2013. The record fails to support a 12 month duration of clinical signs, findings or symptoms of mental illness." (R. 29).[3]

To be found disabled, a claimant must have an "[i]nability to engage in substantial gainful activity . . . which has lasted or can be expected to last for a continuous period of not

---

[3] The ALJ found that Barnett's depression was present in the record only for the 3 month period May to July 2013. In fact, the treatment notes cover three months from May 16, 2013 to August 19, 2013. (R. 952, 964).

8

less than 12 months." 42 U.S.C. § 423(d)(1)(A); SSR 82-52, 1982 WL 31376, at *2 (Jan. 1, 1928).  If a claimant has an impairment that has not lasted for 12 months, he can meet the durational requirement if the impairment is "expect to last for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1509, 416.909.  If an ALJ denies a claim because of insufficient duration, the ALJ "must state clearly in the denial rationale that" within 12 months of onset, there was or is expected to be sufficient restoration of function so that either "there is or will be no significant limitation of the ability to perform basic work-related function" or "that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in [significant gainful activity], considering pertinent vocational factors."  SSR 82-52, 1982 WL 31376, at *3.  The ALJ stated neither here.

The ALJ failed to properly determine whether Barnett's depression met the twelve-month durational requirement.  First, the ALJ failed to consider whether Barnett's depression existed prior to the date of diagnosis at Maine Center in determining the duration of his impairment.  Barnett started receiving mental health treatment at Maine Center in May 2013.  Barnett was referred to Maine Center for a mental health assessment by Maine Township General Assistance, where he worked one or two days a week for two hours a day in exchange for welfare benefits.  (R. 49, 952).  The referral from Maine Township suggests that Barnett likely had symptoms or functional limitations from depression before his initial assessment at Maine Center on May 16, 2013.  Moreover, the Maine Center records reflect a mental impairment continuing over a 12 month period.  Barnett reported to Dreschler that he had been experiencing depression related symptoms for over a year prior to May 2013, since shortly after he became unemployed in December of 2009.  (R. 952).  The ALJ did not mention or discuss these key facts in deciding that Barnett's depression-related symptoms were present "only from the period from May through July 2016."  (R. 29).

Even if Barnett's depression had not already lasted for twelve months at the time of the ALJ's March 3, 2014 decision, the impairment could have been the basis for a finding of

9

disability. Barnett need not demonstrate that he already experienced twelve months of disability but can meet the duration requirement by showing that the impairment can be expected to last for twelve months in the future. Barnett put forth evidence indicating that after August 19, 2013 (the date of the last record from Maine Center), he continued to experience depressive symptoms and he continued to seek treatment for depression. At the hearing on October 25, 2013, Barnett testified that he was currently receiving mental health treatment at Maine Center, every three to four weeks. (R. 60, 63). Barnett further testified that he continued to have anger outbursts at times and racing thoughts with "too much going on" in his head. (R. 62, 63). The ALJ failed to address or consider this testimony when evaluating how long Barnett's depression could be expected to last. On remand, the ALJ should consider how long Barnett's depression existed prior to diagnosis and how long his depression could be expected to last when determining the duration of Barnett's depression.

Given that the ALJ must more fully develop the record and reconsider the duration requirement on remand, the Court declines to reach the issue of whether the ALJ properly evaluated Barnett's subjective symptoms. On remand, the ALJ should reevaluate Barnett's subjective symptoms in light of SSR 16-3p.

### III. CONCLUSION

For the reasons and to the extent stated above, Plaintiff's Motion for Summary Judgment [16] is granted and the Commissioner's Motion for Summary Judgment [18] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. The Clerk is directed to enter judgment in favor of Plaintiff Michael David Barnett and against Defendant Commissioner of Social Security.

E N T E R:

*Daniel G. Martin* (signature)

_____
**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: June 30, 2016**